FILED
2009 Mar-19  AM 09:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID COLEMAN, MALCOM** | ) | |
| **DUDLEY, FRANKIE EDWARDS,** | ) | |
| **JAMES S. HARRIS, MARDAGUS** | ) | |
| **HENDERSON, DAVID JACKSON,** | ) | |
| **EMMANUEL JONES, ANDREW** | ) | **Case No.: 2:07-CV-915-VEH** |
| **LUCAS, MARVIN LEONARD,** | ) | |
| **DEVON MACK, on behalf of** | ) | |
| **themselves and all those similarly** | ) | |
| **situated who consent to** | ) | |
| **representation,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BUFFALO ROCK COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.     Introduction

Pending before the court is Plaintiffs' Motion for Conditional Collective-Action Certification and for Court-Approved Notice to the Collective Action Class (Doc. 37) (the "Collective Action Motion") filed on July 28, 2008.  Related to the Collective Action Motion and also pending are Plaintiffs' Corrected Motion to Strike Or in the Alternative Disregard Affidavits and Declarations (Doc. 73) ("Motion to

Strike") filed on October 18, 2008, and BRC's Motion to Substitute Declaration (Doc. 77) ("Motion to Substitute") filed on October 31, 2008.

These matters have been briefed extensively.  Further, all motions are ripe for review.  For the reasons articulated herein: (1) Plaintiffs' Collective Action Motion is due to be granted; (2) Plaintiffs' Motion to Strike is due to be denied; and (3) BRC's Motion to Substitute is also due to be denied.

## II.    Plaintiffs' Collective Action Motion

### A.    Background

BRC "is a Pepsi-Cola bottler and wholesaler [that] operates 14 distribution centers throughout Alabama, Florida, and Georgia."  (Doc. 8 ¶ 18; Doc. 12 ¶ 18).[1] The named plaintiffs,[2] ten current and former employees from BRC's Birmingham

---

[1]   The breakdown of the distribution centers are:  (1) Birmingham, Alabama; (2) Dothan, Alabama; (3) Gadsden, Alabama; (4) Talladega, Alabama; (5) Huntsville, Alabama; (6) Mobile, Alabama; (7) Montgomery, Alabama; (8) Tuscaloosa, Alabama; (9) Tuscumbia, Alabama; (10) Columbus, Georgia; (11) Albany, Georgia; (12) Newnan, Georgia; (13) Panama City, Florida; and (14) Pensacola, Florida.  (Doc. 46 at 4 n.5).  Twelve of the fourteen distribution centers also operate as divisions. (*Id.*).  The two exceptions are the Talladega distribution center, which is included in the Gadsden division, and Albany, which is a part of the Columbus division.  (*Id.*).

[2]   The named plaintiffs are:  (1) James S. Harris ("Harris"); (2) Mardagus Henderson ("Henderson");(3) David Jackson ("Jackson"); (4) Emmanuel Jones ("Jones"); (5) Andrew Lucas ("Lucas"); (6) Marvin Leonard ("Leonard"); (7) Devon Mack ("Mack"); (8) David Coleman ("Coleman"); (9) Malcolm Dudley ("Dudley"); and (10) Frankie Edwards ("Edwards").

division (Doc. 37 at Br. at 3), filed this purported collective action arising under the Fair Labor Standards Act ("FLSA") on May 15, 2007.   (Doc. 1).   Generally, "Plaintiffs contend that [BRC] willfully violated the FLSA by denying them and the putative class overtime pay for their hours worked in excess of 40 per week." (Doc. 37 at Br. at 1).

The brief in support of the Collective Action Motion states that "Plaintiffs seek to represent a class of as many as 500 current and former delivery merchandisers ["DMs"] in 13 of [BRC]'s 14 tri-state divisions[.]"[3]   (Doc. 37 at Br. at 1 ).   More specifically, Plaintiffs define the class as:

> **All current and former DELIVERY MERCHANDISER employees who worked for Buffalo Rock Company from _____ , 2005 [3 years prior to the date of the court's certification order] to April 1, 2007, who were not paid overtime by Buffalo Rock Company for work hours over 40 in a work week at the rate of one and one-half times their regular rate of pay.**

(Doc. 37 at 1).

The purported collective action challenges BRC's compensation practices with respect to its DMs for the period of time from May 15, 2004, to April 1, 2007, to

---

[3]  Plaintiffs do not include in their Collective Action Motion the Panama City distribution center because the DMs there were already being compensated on an hourly rate plus overtime basis.  (Doc. 46 at 1-2 n.2).

whom BRC paid a commission and/or a salary, but no overtime.  (*Id.* at 3).[4]   The

estimated size of "the potential class includes perhaps as many as 500 individuals

employed in [BRC's] 13 divisions in three different states."  (Doc. 37 at 20).

### B.   Standard of Review

The FLSA authorizes collective actions as follows:

> An action . . . may be maintained against any employer . . . by any one
> or more employees for and in behalf of himself or themselves and other
> employees similarly situated.  No employee shall be a party plaintiff to
> any such action unless he gives his consent in writing to become such
> a party and such consent is filed with the court in which such action is
> brought.

29 U.S.C. § 216(b).[5]  A district court, in its discretion, may authorize the sending of

notice to potential class members in a collective action in "appropriate" cases.

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989); *Hipp v. Liberty

Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Haynes v. Singer Co., Inc*.,

696 F.2d 884, 886-87 (11th Cir. 1983).

---

[4]   There is no dispute that, beginning on April 1, 2007, BRC changed its
compensation practices, installed time clocks, and began paying DMs for overtime
on an hourly wage plus commission basis.

[5]  A collective action under § 216(b) differs from a Rule 23 class action in that
an individual does not become a party to the § 216(b) case unless and until he gives
his consent in writing to become a party, *i.e.*, "opts-in" to the action, whereas a party
must affirmatively "opt-out" of a case proceeding as a Rule 23 class action.  *See
Thiessen v. General Elec. Capital Corp*., 267 F.3d 1095, 1102 (10th Cir. 2001).

The Court of Appeals for the Eleventh Circuit has endorsed a two-step approach to determining whether to certify a collective action under Section 216(b):

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and affidavits which have been submitted-whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-24 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), *as recognized in Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 n.38 (11th Cir. 2008)).

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims.

*Id.*[6]  During the notice stage, the court should determine: (1) whether there are other employees who wish to opt-in to the action; and (2) whether those employees are "similarly situated" with respect to their job requirements and pay provisions. *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

Plaintiffs bear the burden of establishing that they are similarly situated with the group of employees they wish to represent.  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).  Under the two-step process, the initial burden for the plaintiffs is not heavy.  Applying the "fairly lenient standard" of the notice stage, plaintiffs are not required to show that they hold identical positions but, rather, must show only that their positions are similar to those positions held by the putative class members.  *Hipp*, 252 F.3d at 1217; *Grayson*, 79 F.3d at 1096.  Courts have held that the notice stage requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Thiessen*, 267 F.3d at 1102; *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 508 (M.D. La. 2005) (citation omitted); *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D. N.J. 1988).

---

[6]  Although *Hipp* involved a collective action brought under the Age Discrimination in Employment Act of 1967, the Eleventh Circuit has made clear that the analysis set forth in that case applies with equal force to FLSA collective actions. *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

Further, the Eleventh Circuit has stated that "a unified policy, plan, or scheme of discrimination <u>may not be required</u> to satisfy" the similarly-situated requirement of § 216(b). *Hipp*, 252 F.3d at 1219 (quoting *Grayson*, 79 F.3d at 1095) (emphasis added). Nevertheless, a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Marsh v. Butler County Sch. Sys.*, 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003); *see also Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D. Or. 2002) (putative class members must "share common identifiable facts or legal theories"); *Williams v. Accredited Home Lenders, Inc.*, No. 1:05-CV-1681-TWT, 2006 WL 2085312, *3 (N.D. Ga. July 25, 2006).

However, BRC urges that this case should not proceed pursuant to the two-tiered approach articulated in *Hipp*.  Instead, it contends that the posture of this lawsuit is such that the first level recommended in *Hipp* is inapplicable and this court instead should be guided by the approach that it used in *Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, 2006 WL 6012784 (N.D. Ala. Nov. 15, 2006).

As the undersigned explained the reasoning for skipping the stage-one analysis in *Fox*:

Now, <u>six years later, discovery is largely complete</u> and certification of

7

> the Plaintiffs' class under the more lenient standard of the first-tier in
> *Hipp* would be unjust, <u>inconsistent with prior Orders of this Court</u>, and
> would be contrary to the interests of judicial economy.

*Fox*, 2006 WL 6012784, at *5 (emphasis added).   Further, more than 5,000

employees had already opted in during this six year period.  *Id.*, at *6.

Additionally, the plaintiffs in *Fox* agreed that following the conditional

collective action step was <u>not</u> an appropriate procedure under the circumstances of

that litigation:

> In the papers Plaintiffs filed to make the Court aware of the
> Eleventh Circuit's holding in *Hipp*, <u>the Plaintiffs conceded that the
> two-tiered analysis recommended in *Hipp* is inappropriate in the instant
> action due to discovery being near to completion</u>. The Plaintiffs urged
> the Court to enter a final certification of the proposed collective action
> while taking into account the evidence produced through discovery.

*Fox*, 2006 WL 6012784 , at *5 n.5 (emphasis added).  In sharp contrast with *Fox*,

Plaintiffs here vehemently oppose moving to the final certification phase at this time.

Among other things, Plaintiffs point out that <u>the parties agreed to the use of a

two-tiered approach</u> as exemplified by the report of parties' planning meeting and the

Scheduling Order entered in the case.  (*See* Doc. 17 at 4 ("<u>The parties request a

scheduling conference for the purpose of re-evaluating the discovery and other

deadlines should the court grant a motion for conditional collective action

certification</u>, for court approved notice to the collective class, or for class certification

under Fed. R. Civ. P. 23.") (emphasis added);  Doc. 19 at 3 ("If the court grants this motion [*i.e.*, a motion for conditional collective treatment], <u>the parties shall, within 14 days after the date on which the court publishes its order granting the motion, file a joint proposed revised scheduling order</u>.") (emphasis added)).

Plaintiffs also note that while this action, filed in 2007, has proceeded through certain areas of discovery, the process is still far from complete.  In particular, Plaintiffs maintain that crucial discovery on the "similarly situated" issue is still lacking.  This gap in the completion (or near completion) of discovery is consistent with the structure of the scheduling process contemplated above.

Third, Plaintiffs argue that BRC  improperly withheld important information from them upon which they needed to conduct further discovery, including the names and affidavits of the thirty-five DMs offered in opposition to <u>final</u> certification whose identities were known to BRC at least as early as May and June of 2007,[7] as well as grounds for BRC's reliance upon the Motor Carrier Exemption ("MCE") as a bar against overtime pay and collective action treatment due to individualized inquiries.

Without delving into whether BRC acted wrongfully as alleged by Plaintiffs or whether Plaintiffs should have filed a motion about the missing discovery rather

---

[7] As measured from the dates on which the various documents were executed. (*See* Doc. 48 at Ex. 16).

than waiting until briefing to raise the issue, the court agrees with Plaintiffs that the development of the record here is not nearly as extensive as that in *Fox*. Also, while this case has certainly moved beyond the early stages of litigation in some respects, the Collective Action Motion was filed within roughly fourteen months of the lawsuit's initiation and in accordance with the parties' agreed schedule.

Therefore, considering the totality of the circumstances, the court concludes that addressing the merits of Plaintiffs' Collective Action Motion under the first tier is the appropriate measure to take; to do otherwise would be unjust and inconsistent with parties' jointly proposed scheduling structure and the Scheduling Order ultimately entered in the case. *See, e.g., Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004) ("Further, the scheduling order did not impose a discovery deadline, it did not set a date for the final pretrial conference, and it did not set a trial date because <u>the court contemplated entering an amended scheduling order after the court rules on the current motion for class certification</u>. In any event, <u>this case certainly has not progressed to the conclusion of discovery</u>, at which point the court would apply the 'second stage' analysis standard.") (emphasis added).

### C.    First-Tier Considerations

Certification, if granted at the preliminary stage, <u>is always conditional</u>. In making the initial decision regarding certification, the court must consider whether

it will serve the purposes and putative benefits of a collective action under § 216.

The Supreme Court has identified the main benefits of a collective action under § 216(b):

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.

*Hoffmann-La Roche*, 493 U.S. at 170.  Accordingly, the court must balance the putative benefits against any prejudice to the defendant and any judicial inefficiencies that may result from allowing the case to proceed collectively.  *Bayles v. American Medical Response of Colorado, Inc.,* 950 F. Supp. 1053, 1067 (D. Colo. 1996).

As mentioned above, the court's decision to authorize the sending of notice to potential class members in collective actions brought under § 216(b) is discretionary in nature.  *Haynes v. Singer Co.*, 696 F.2d 884, 888 (11th Cir. 1983) ("Surely, there was no abuse of discretion on the part of the trial court; or to put it another way, we are not left with the impression that any mistake has been committed.") (footnote omitted); *see also Hipp*, 252 F.3d at 1219 ("The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court.") (emphasis added).

Under the applicable conditional collective action legal principles, this court

must "satisfy itself that there are other employees of [BRC] who desire to 'opt in' and who are 'similarly situated' [to Plaintiffs] with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1567-68. Plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim that collective action status is appropriate. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citation omitted).

### D.    First-Tier Application

#### 1.    Opt-In Interest Requirement

Turning to the first requirement, Plaintiffs rely upon as supporting material the consents executed by each of the ten named plaintiffs (Doc. 8 at Ex. 1) as well as those from the following additional Birmingham-based employees of BRC:  (1) Theodore L. Towns ("Towns") (Doc. 9 at Ex. 1 at 1); (2) Reginald G. Thomas, Jr. ("Thomas") (Doc. 9 at Ex. 1 at 2); (3) Courtland Davis ("Davis") (Doc. 9 at Ex. 1 at 3); (4) Lorenzo Green ("Green") (Doc. 9 at Ex. 1 at 4); (5) Frederick Jerome Moore, Sr. ("Moore") (Doc. 9 at Ex. 1 at 5); (6) Gerald Hegler, Jr. ("Hegler") (Doc. 9 at Ex. 1 at 6); (7) Bobby Norwood ("Norwood") (Doc. 9 at Ex. 1 at 7); (8) Eric Jermaine Thompson ("Thompson") (Doc. 22 at Ex. 1 at 1); and (9) Terry Pendleton

("Pendleton") (Doc. 22 at Ex. 1 at 2).[8]  The foregoing list of consents establishes more than a mere expectation that other employees would be interested in joining the proposed collective action.

The record  establishes that the consents <u>cited by Plaintiffs</u> come exclusively from either current or former employees working as a delivery merchandiser for BRC's Birmingham facility.  (Doc. 72 at 7 ("There are the 10 named plaintiffs plus nine other delivery merchandisers in Birmingham who filed consents to join.") (footnote omitted)).  While BRC challenges the opt-in interest on the grounds that Plaintiffs lack sufficient support as to its other locations, the court is not aware of (nor has BRC cited to) any <u>controlling</u> authority that requires evidence of a desire to opt-in from employees from each division to satisfy the sufficient interest requirement at the conditional certification stage.  Additionally and regardless, the record <u>actually</u> reflects that four consenting employees who <u>have</u> expressed a desire to join the litigation are from the <u>Montgomery</u> area.  (*See* Doc. 26 at Ex. 1 ¶ 2 (expressly

---

[8]   The court notes that four additional consents appear in the record:  (1) Kenneth Thompson ("Thompson") (Doc. 26 at Ex. 1) (declaration and consent); (2) Dana Hooper ("Hooper") (Doc. 26 at Ex. 2) (declaration and consent); (3) Tony Baker ("Baker") (Doc. 29 at Ex. 1) (declaration and consent); and (4) James Pittman ("Pittman") (Doc. 29 at Ex. 2) (declaration and consent).  Plaintiffs' reason for not including these employees in their overall calculations is not clear to the court. Regardless, the interest shown by Plaintiffs based upon the nine expressly mentioned is sufficient under the first tier analysis.

acknowledging holding position "as a merchandiser in [BRC's] Montgomery, Alabama location"); Doc. 26 at Ex. 2 ¶ 2 (same); Doc. 29 at Ex. 1 at 3 (indicating Montgomery, Alabama address); Doc. 29 at Ex. 1 at 3 (same)).

BRC challenges neither the content nor the authenticity with respect to any of these consent documents. In fact, BRC fails to discuss the consents at all and states that "Plaintiffs have [only] produced one affidavit from the proposed class." (Doc. 46 at 29). As Plaintiffs correctly explain, evidence of an interest to participate may be shown through affidavits <u>or</u> consents, and <u>authority cited by BRC confirm this commonplace FLSA principle</u>. *See, e.g., Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-CV770T-27MSS, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006) ("Evidence of other employees who desire to opt in <u>may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees</u>.") (citing *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d. 1272, 1277 (M.D. Ala. 2004) (emphasis added)).[9]

Moreover, unlike *Saxton v. Title Max of Alabama, Inc.*, 431 F. Supp. 2d 1185, 1187-88 (N.D. Ala. 2006), relied upon by BRC (Doc. 46 at 18 n.37), this is not a record in which BRC "has produced substantial [competing] evidence, including 158 affidavits . . . indicating that members of a potential opt-in class likely have no

---

[9] *Rodgers* is cited by BRC in Doc. 72 at 7 n.9.

14

interest in opting in to this lawsuit." (footnote and citation omitted).[10]  As Plaintiffs correctly observe, "none of the 35 affiant-delivery merchandisers states that he or she has no desire to participate in this lawsuit."  (Doc. 72 at 7 n.10).  This type of opposition is insufficient to negate the weight that is due to be afforded to those BRC employees who have independently expressed their desire to seek overtime compensation and otherwise participate in the litigation against BRC during this initial phase.

In fact, in its significant silence,[11] BRC's brief really abandons (or alternatively concedes) the issue of whether Plaintiffs have adequately met the opt-in interest requirement, <u>at least with respect to its Birmingham division</u>. (*See* Doc. 46 at 17 ("**<u>Plaintiffs' Certification Motion Should Be Denied for Divisions Other Than Birmingham.</u>**")). Therefore, for all these reasons, Plaintiffs have established a reasonable basis for the court to conclude that an interest to opt-in exists for the

---

[10]  The other cases cited by BRC on the sufficient interest issue are similarly inapposite and/or significantly distinguishable.

[11]  *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *see also Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted)).  "[T]he onus is upon the parties to formulate arguments[.]"  *Dunmar*, 43 F.3d at 599 (citation omitted).

collective action proposed by Plaintiffs on a conditional basis.

## 2.   Substantially Similar Requirement

Regarding the second part of conditional collective action treatment, the court

reads *Dybach* to require a comparison of the pool of potential opt-in candidates with

Plaintiffs to see if their job requirements and pay provisions are substantially similar.

*See also Grayson*, 79 F.3d at 1096 ("[P]laintiffs need show only 'that their positions

are similar, not identical,' to the positions held by the putative class members.")

(citation omitted).   Moreover, "the burden is on the plaintiffs to make an evidentiary

showing that they and the proposed class are similarly situated, not on the defendants

to disprove such similarity." *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227,

1232 (S.D. Ala. 2003).

However, this burden is not an insurmountable one.  Plaintiffs "may meet this

burden, which is not heavy, by making substantial allegations of class-wide

discrimination, that is, detailed allegations supported by affidavits which successfully

engage defendants' affidavits to the contrary.") (citation omitted).  *See Hipp*, 252

F.3d at 1219.  Moreover, "the 'similarly situated' requirement of § 216(b) is <u>more

elastic and less stringent</u> than the requirements found in Rule 20 (joinder) and Rule

42 (severance)." *Grayson*, 79 F.3d at 1095 (emphasis added).

On the other hand, "[a] court may deny plaintiffs' right to proceed collectively

if the action arises from circumstances <u>purely personal to the plaintiff</u>, and <u>not from</u> <u>any generally applicable rule, policy, or practice</u>." *Williams v. Accredited Home Lenders, Inc.*, No. 1:05-CV-1681-TWT, 2006 WL 2085312 , at *4 (N.D. Ga. July 25, 2006) (quoting *England v. New Century Financial Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)) (emphasis added).   Additionally as recognized above, under Eleventh Circuit controlling precedent, "a unified policy, plan, or scheme of discrimination [or FLSA prohibited actions] <u>may not [even] be required</u> to satisfy the more liberal "similarly situated" requirement of § 216(b)[.]" *Grayson*, 79 F.3d at 1095 (emphasis added).

Here, Plaintiffs maintain that BRC's failure to uniformly structure compensation on a non-exempt basis for DMs working at thirteen of its fourteen divisions is the "unified policy, plan, or scheme" that allegedly resulted in the proposed opt-in class not receiving overtime wages, in contravention of the FLSA. As evidentiary support, Plaintiffs primarily point to the multitude of declarations filed into the record that substantiate the similarity of Plaintiffs' positions with that of the proposed class of opt-in plaintiffs, both in terms of their job duties as well as the terms of their compensation to exclude any overtime component.   Plaintiffs also heavily rely upon BRC's decision to change its compensation practices for all DMs effective April 1, 2007.

BRC counters that Plaintiffs "have failed to establish that overtime was denied to DMs across BRC divisions based upon a company-wide policy, plan, or practice." (Doc. 46 at 19 (footnote omitted)).  BRC further explains that, prior to April 1, 2007, "[o]ne division made the decision to pay hourly plus overtime, some paid DMs a salary, some paid straight commission."  (*Id.* at 20).

Regarding the latter, Plaintiffs do not seek to include the one BRC division, namely Panama City, in which DMs were paid on an hourly plus overtime basis. Further, as to all the other divisional employees which Plaintiffs do seek to represent, the critical inquiry is <u>not</u> so much whether those DMs were compensated under an identical company-wide formula, <u>but rather</u> whether the manner employed by each division (and permitted by BRC corporate) to treat DMs as exempt employees complied with the FLSA hourly plus overtime requirements.  For non-exempt employees which Plaintiffs' theory contemplates,[12] compensation on a salaried <u>or</u> a

---

[12]  The court draws no conclusions at this juncture regarding the application of any potential exemptions.  As BRC correctly notes in its opposition brief in response to Plaintiffs' discussion of the exemption issue in "a motion for <u>conditional</u> collective action certification . . . ultimate liability is not even before the Court."  (Doc. 46 at 11 n.15 (emphasis added)); *see also Morgan*, 551 F.3d at 1245 (noting that district court addressed exemption issues during decertification phase); *id.* (During the decertification stage "Family Dollar argued (1) the opt-in Plaintiffs were not similarly situated under the FLSA, because their day-to-day job duties were too different; (2) <u>the executive exemption defense is inherently individualized;</u> and (3) discrepancies in the store managers' duties made a collective trial impossible and unfair.") (emphasis added); *id.* at 1621 ("In *Anderson*, we also quoted approvingly of *Thiessen*,

commission basis without any hourly overtime component violates the FLSA.

Moreover, BRC's arguments fail to adequately acknowledge, much less address, its lack of any company-wide mandate (in this case, at least until April 1, 2007) regarding compensation for DMs as evidence supporting a potentially actionable single decision, policy, or plan under the FLSA. Similarly, BRC discounts the significance of its <u>corporate</u> decision to change its compensation practices for all DMs, effective April 1, 2007, as compelling evidence of not only a similarity in the job duties of DMs, but also the power to and actual exercise of control over compensation practices at the corporate level.[13]

---

where the Tenth Circuit identified a number of <u>factors that courts should consider at the second stage</u>, such as: '(1) disparate factual and employment settings of the individual plaintiffs; (2) <u>the various defenses available to defendant[s] [that] appear to be individual to each plaintiff;</u> [and] (3) fairness and procedural considerations[.]' *Anderson*, 488 F.3d at 953 (quoting with approval *Thiessen*, 267 F.3d at 1103); *see also Mooney*, 54 F.3d at 1213 n. 7, 1215-16.") (emphasis added); Morgan, 551 at 1261-62 ("Thus, <u>at the second stage,</u> 'although the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions' <u>and encompass the defenses to some extent</u>.") (citation omitted) (emphasis added).

[13]   The court notes that BRC strongly objects to Plaintiffs' use of the term "admission" when describing the contents of the so-called Crane memo (Doc. 38 at Ex. 6 (with page 1, relied upon by Plaintiffs for the "classified incorrectly based on current job descriptions and primary duties performed" language (Doc. 37 at 10), entirely omitted)) and BRC's subsequent decision to implement new compensation practices for DMs.  (*See* Doc. 46 at 12).   Instead, BRC maintains that the compensation policy was an effort "to standardize the position and make market-

Furthermore, within the Eleventh Circuit, evidence of a company-wide policy is not necessary during the initial FLSA certification stage.  Finally, Plaintiffs have adduced testimony confirming BRC's corporate role in determining a  particular position's exempt/non-exempt status.  For example, as one of BRC's divisional support managers testified:

> Q. Okay.  Now, is it part of your job responsibility in HR to analyze whether a position is exempt or nonexempt?
> A. No, sir, it's not.
> Q. Whose job responsibility is that?
> A. That falls under our corporate HR department. . . .
> Q. So your HR department has no responsibilities with regard to assessing whether a job over which you have management authority is exempt or nonexempt?
> A. No, sir, they do not.
> Q. Okay.  That's a function of the corporate HR department?
> A. Yes, sir.

(Doc. 41 at Ex. J (Dep. of Matthew Jordan, Birmingham Division) at 130-31 (emphasis added)).

As primary authority on the substantial similarity requirement, BRC once again

_____

related decisions to pay employees an hourly rate plus overtime" and not any recognition that its DMs had been misclassified.  (*Id.*).  To be clear, the court's decision to allow this case to proceed conditionally as a collective action does not turn upon any determination that BRC has necessarily admitted that it improperly treated DMs as non-exempt employees under the FLSA.  Rather, it is the fact of the corporate review of FLSA classifications generally (*see, e.g.*, Doc. 38 at Ex. 5) and the later implementation of a new pay structure for all DMs (and not the motivation behind such actions) that in part forms the basis for the court's conclusion that the substantially similar requirement has been met in this instance.

relies upon *Fox*.  However, *Fox* is a donning and doffing decision, making its discussion of individualized concerns not very helpful in this instance.  Also, *Fox* did not involve any issues of a corporate policy not to have a standard company-wide policy for compensating DMs, as is theorized by Plaintiffs in this case.  Further, as discussed above, *Fox* is significantly procedurally different in that it encompassed an evaluation of the caliber of the plaintiffs' evidence under the more demanding FLSA second-stage assessment.

Furthermore, the entire thrust of BRC's opposition to the Collective Action Motion is that the litigation is not suitable for second-tier treatment under the FLSA,[14] including in particular its urging that the application of the MCE bars this case from proceeding as a collective action.[15]  Therefore, the bulk of the authorities upon which BRC relies have no use in the context of first-tier conditional collective action certification.  *See, e.g., Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 219 (2d Cir. 2002) (affirming district court ruling in non-collective action that plaintiff

---

[14]  In fact, with BRC's bold assumption that the court would not approach this case from a first-tier view and its nearly exclusive focus on a second-stage analysis, it has essentially abandoned any objections to <u>conditional</u> certification and/or alternatively has conceded those issues.  *See* discussion and citations at 15 & n.11, *supra*.

[15]  In doing so, BRC insists that "all DMs are subject to the [MCE]" (Doc. 46 at 12 n.19), and therefore they are <u>all</u>, to that extent, undisputedly similarly situated.

"was subject to the authority of the United States Secretary of Transportation with respect to his qualifications and maximum hours of service and thus exempt from the overtime requirement of the FLSA."); *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1026 (10th Cir. 1992) (affirming summary judgment in favor of employer with respect to group of route drivers and route supervisors: "The district court correctly concluded, based upon the undisputed facts, that the character of the activities subjected the Plaintiffs to the power of the Secretary of Transportation, thus exempting them from the FLSA.") (footnote omitted).[16] Finally, to the extent that this court's analysis differs in some respects from that contained in other cases evaluating evidence at the initial FLSA level, including any district court decisions or opinions issuing from courts of appeals outside of the Eleventh Circuit, such authority is, at most, only persuasive, and this court is not bound to follow it and declines to do so.

Therefore, given the lenient standard it is to employ at this <u>conditional</u> stage, the evidence detailing the similarity of job duties and pay provisions, the testimony that "corporate HR" made the pay decisions at issue, and the corporate pay

---

[16] The Court of Appeals for the Tenth Circuit also explained that Wichita, the employer, drew a distinction that the between the job categories of route drivers and route supervisors versus merchandisers and warehouse laborers: "Although Wichita did not pay overtime to its route drivers and route supervisors, <u>it did pay overtime to its merchandisers</u> and warehouse laborers. Wichita regarded these latter positions as nonexempt under the Act." 968 F.2d at 1023 (emphasis added).

restructuring for DMs that BRC implemented universally throughout its divisions effective April 1, 2007, the court, in its discretion, determines that Plaintiffs have demonstrated a reasonable basis to conclude that the similarly situated requirement has been satisfied with respect to the entire class of DMs.   The court relatedly determines that judicial economy will be served by such conditional collective action certification and that the value of this judicial economy outweighs any competing concerns over  "stirring up" litigation.  *See Hoffmann-La Roche*, 493 U.S. at 170 ("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory [or FLSA-violating] activity."); *see, e.g., Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995) ("As noted by the court in *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991), 'courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation.'"), *aff'd,* 114 F.3d 1202 (11th Cir. 1997).

## III.   Plaintiffs' Motion to Strike

Plaintiffs' Motion to Strike seeks to have the court to strike, or alternatively disregard, thirty affidavits and three declarations offered by BRC in opposition to FLSA second-stage certification.  (Doc. 73 at 1).  In particular, BRC relies upon this evidence to establish the predominance of individualized issues, including the

potential application of the MCE, such that FLSA final certification is inappropriate. (*Id.* at 2). Because the court has evaluated Plaintiffs' Collective Action Motion under the FLSA first level, Plaintiffs' Motion to Strike is due to be denied as moot.

## IV.   BRC's Motion to Substitute

BRC's Motion to Substitute seeks to replace an objectionable declaration[17] executed by Michael McDonald ("McDonald") and relied upon by BRC in opposition to second-tier certification with one prepared by a different declarant, namely Barry Hayes ("Hayes"). (Doc. 77 at 1). Akin to Plaintiffs' Motion to Strike, BRC's Motion to Substitute is also due to be denied as moot because the court bases its decision upon a first-stage evaluation of the record.

## V.   Plaintiffs' Proposed Notice

BRC's has only one objection to Plaintiffs' proposed notice. (Doc. 111 ¶ 3). In particular, BRC requests that "in every place in the proposed notice and the consent form where the term "delivery merchandiser" is used . . . that the term

---

[17] The court notes that Plaintiffs objected to the declaration on the grounds of BRC's failure to timely disclose McDonald as a potential material witness. (Doc. 77 ¶ 3). BRC does not dispute the untimeliness of its actions, but argues that it has substantial justification for its use of McDonald as a replacement witness because of Hayes's medical status and harmless because "McDonald testified to the same matters Hayes would have." (Doc. 77 ¶ 4).

'conventional delivery merchandiser' be inserted in its place."[18] (*Id.*).  BRC suggests that this clarification is necessary to avoid any confusion over "who is covered by the potential collective action" because it employs some delivery merchandisers who would not be part of the conditional collective class because they do not deliver product to retail customers.  (*Id.* ¶ 3.b).

Plaintiffs oppose this suggested change by pointing out that BRC employees who deliver product to retail customers (and relatedly have similar job duties) hold a variety of titles, including "conventional delivery merchandisers," "retail delivery merchandisers," and "delivery merchandisers."   (Doc. 114 at 2; *id.* at 3 n.1). Accordingly, Plaintiffs contend that the modification proposed by BRC to use the formal job title of "conventional delivery merchandiser" would actually create more confusion, rather than alleviate any.  (*Id.* at 5).

Moreover, Plaintiffs note that BRC will be required only to produce those names of employees "who, in substance, worked as 'delivery merchandisers' delivering product to retail customers."   (*Id.* at 5).  Finally, BRC will have an opportunity to object to any purported opt-ins who actually operated as "unconventional" delivery merchandisers.  (*Id.*).

---

[18] A copy of Plaintiffs' proposed consent form is attached as Exhibit 11 to Doc. 38.

Under such circumstances, the court agrees with Plaintiffs, and BRC's objection is **OVERRULED**.   However, the court will require the following underlined language to be added to the notice and consent form, which it believes more clearly defines the conditional collective class:

> **All current and former DELIVERY MERCHANDISER employees who worked for Buffalo Rock Company underlining product to retail customers between the dates of _____, 200\_ [3 years prior to the date of the court's certification order] to April 1, 2007, and who were not paid overtime by Buffalo Rock Company for work hours over 40 in a work week at the rate of one and one-half times their regular rate of pay.**

(Doc. 37 at 1 (additions by court noted with underlining)).   Accordingly, as modified, the notice will state:

> **All current and former DELIVERY MERCHANDISER employees who worked for Buffalo Rock Company delivering product to retail customers between the dates of _____, 200\_ [3 years prior to the date of the court's certification order] to April 1, 2007, and who were not paid overtime by Buffalo Rock Company for work hours over 40 in a work week at the rate of one and one-half times their regular rate of pay.**

The first paragraph of the proposed consent form shall be similarly modified.   (Doc. 38 at Ex. 11 at 1).

## VI.   Conclusion

Accordingly, **IT IS ORDERED** as follows:

1.   Plaintiffs' Collective Action Motion pursuant to 29 U.S.C. § 216(b) is

**GRANTED**.

2.      The conditional collective action, as defined and modified herein, is certified for notice purposes only.  Relatedly, BRC's objection to the terminology contained in the proposed notice and consent form is **OVERRULED**.

3.      Plaintiffs shall file an amended proposed notice of right to opt-in to the lawsuit <u>and</u> a similarly amended consent form consistent with the court's modifications within fourteen days from the date this order is entered.  The amended notice should also reflect the now determinable FLSA conditional collective action time period.

4.      BRC shall provide Plaintiffs with the names, the last four digits of social security numbers, and the last known physical addresses of all individuals in the putative FLSA collective action within thirty days from the entry date of this order.

5.      Once Plaintiffs have filed the amended notice and consent form with the court and received the above  names, addresses, and social security information from BRC, then Plaintiffs shall provide notice by First Class Mail to all additional putative opt-in collective action plaintiffs.

6.      Within fourteen days from the date this order is entered, the parties shall file a joint proposed revised scheduling order.

**DONE** and **ORDERED** this the 19th day of March, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge